IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| KIMBERLY WETHERELL et als * * Plaintiffs * * v. * HOSPITAL INTERAMERICANO DE * MEDICINA AVANZADA, INC. et als * * Defendants * ************************************* | Civil No. 06-2079 (SEC) |

## OPINION and ORDER

Defendants filed two motions *in limine* requesting that this Court exclude Plaintiffs' expert witnesses, Dr. Allan Hausknecht and Dr. Steven Weissberg, from testifying at trial. Dockets ## 43 & 44. According to Defendants, the experts' opinions are unsubstantiated and speculative, and therefore, unreliable under Daubert v. Merrel Dow Pharmaecutical, 113 S. Ct. 2786 (1993). They further contend that the experts' testimony would be confusing or misleading to the jury. Plaintiffs opposed. Upon reviewing the filings and the applicable law, Defendants' motions *in limine* are **DENIED**.

**Standard of Review**

FED. R. EVID. 403 allows the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The admission of expert testimony is governed by Federal Rule of Evidence 702, 28 U.S.C.A. Said rule provides that:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 "imposes a gate-keeping function on the trial judge to ensure that an expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" United States v. Mooney, 315

**Civil No. 06-2079 (SEC)**

F.3d 54, 62 (1st Cir. 2002) (quoting Daubert, 509 U.S. at 597).

When faced with expert testimony, a court must first determine whether the expert will testify to scientific knowledge which will assist the trier of fact to understand and determine the facts in issue. Daubert, 509 U.S. at 593. This entails a preliminary assessment as to: (1) whether the reasoning or methodology underlying the expert testimony is scientifically valid, and (2) whether the reasoning or methodology can be applied to the facts of the case. Id. Specifically, in determining if the evidence is reliable, a court must consider the following factors: (1) whether Plaintiff's proffered scientific theory can and has been tested, (2) whether it has been subject to peer review and publication, (3) the known or potential rate of error of the test, and (4) the degree of acceptance of the theory in the scientific community. Daubert, 509 U.S. at 593-595; Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co., 295 F. 3d 68 (2002). However, other factors may also be relevant, such as whether the experts' testimony arises from their own independent research of the litigation, or if they have developed their opinions expressly for the purpose of testifying. McGovern v. Brigham & Women's Hosp., 584 F. Supp. 2d 418, 424 (D. Mass. 2008) (citing Daubert, 43 F.3d 1311, 1317 (9th Cir. 1995).

Puerto Rico courts have explained the standard of care owed to patients as "that [level of care] which, recognizing the modern means of communication and education, ... meets the professional requirements generally acknowledged by the medical profession." Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 167-168 (1st Cir. 2005) (citing Lama v. Borras, 16 F.3d 473, 478 (1st Cir. 1994) (quoting Oliveros v. Abreu, 1 P.R. Offic. Trans. 293, 101 P.R. Dec. 209, 226 (1973))). The standard is a national one, and ordinarily must be demonstrated through expert testimony. Id. To establish causation under Puerto Rico law, "[a] plaintiff must prove, by a preponderance of the evidence, that the physician's negligent conduct was the factor that 'most probably' caused harm to the plaintiff." Turabo Med., 415 F.3d at 168 (citing Lama, 16 F.3d at 478). While this causation standard does not require all other causes of damage to be eliminated, "a jury normally cannot find causation based on mere speculation and conjecture; expert testimony is generally essential." Id.

**Civil No. 06-2079 (SEC)**

**Applicable Law and Analysis**

In their motions, Defendants contend that the experts' opinions are based on unsupported speculation and assumptions, and therefore, do not rely on scientific data. They further argue that their testimony will not assist the fact-finder and could, in turn, potentially mislead the jury. In their first motion *in limine* (Docket # 43), Defendants allege that Dr. Hauknecht's expert testimony is unreliable for the following reasons: (1) he admitted that he would not testify as to the minor's medical care, instead, he would testify about the damages she sustained during childbirth; (2) his opinion is based on incomplete records; (3) he has not reviewed the child's neurological or radiological examinations, the therapist's or the teacher's reports; (4) he stated that his report was preliminary, and that he couldn't render a conclusive opinion as to the child's present condition; (5) that he had not examined the child; (6) his report was, in turn, based on a report made by Dr. Lynda Pollack, a geneticist, who concluded that the child suffers from global developmental delays, but noted that the origin of said damages are unknown; and (7) his testimony is not based on medical literature but instead on his experience as a neurologist..

In their second motion *in limine*, Defendants aver that Dr. Weissberg's expert testimony is unreliable for the following reasons: (1) his report is based on illegible records, in a language unknown to him (Spanish); (2) he admitted that an "occult cord prolapse" was present which, by definition, is not a visible condition; (3) he assumes that Dr. Serrano had to be worried about his patient's well being because he ordered a cesarean section; (4) his report is not based on medical literature but on his experience as an obstetrician; (5) he admitted that the child was born without complications; (6) the information in his report about the child's condition are based on what he was told about the case, and not based on medical records or examinations; and (7) he has not examined the child.

Plaintiffs oppose, arguing that both doctors are qualified experts that have rendered expert testimony in a wide variety of cases. Plaintiffs aver that Dr. Weissberg's report is based on his expertise and experience in the field of gynecology for over 30 years, his analysis of the records in this case, as well as the American College of Obstetrics and Gynecology's findings about cesarean

**Civil No. 06-2079 (SEC)**

sections. Moreover, Plaintiffs point out that, in his report, Dr. Weissberg stated that pursuant to the hospital's records, the cesarean section was due to fetal bradycardia or low baseline fetal heart rate and occult cord prolapse, that fetal hypoxia was present, which requires urgent delivery, that when a cesarean section is called for, it must be done in 30 minutes, and that the hospital record shows that the child suffered intrapartum anoxia, thrombocytopenia and suspected sepsis.

As to Dr. Hausknecht's testimony, Plaintiffs note that it is limited to describing the child's actual condition, as well as the costs incurred in her care. Therefore, he will not testify as to the Defendants' alleged negligent actions. As such, his reliance on Dr. Pollack's findings, and his 30 year experience in the field of neurology, is reasonable. Plaintiff further aver that Dr. Hausknecht reviewed a neurological examination of the child which shows that she suffers from global developmental delay and low muscle tone, which are characteristics of hypoxic ischmic encephalopathy or brain damage, due to the delay in the delivery. Plaintiffs note that, in his report, Dr. Hausknecht concluded that the child's condition requires continuous speech, physical and occupational therapy. Based on the foregoing, Plaintiffs argue that their experts' reports and testimony are reliable and relevant, therefore, they should be admitted as evidence.

Upon reviewing the record, this Court finds that there is no controversy as to the fact that both experts are recognized experts in their respective fields, have had extensive medical education, training, and over 30 years experience in their respective fields. Therefore, the first prong of the Daubert analysis is met. The issue at hand is the validity of their expert opinions in this particular case. Specifically, Defendants challenge the reliability of the methodology used by the experts in arriving at their conclusions, *i.e,* that they did not examine the child, they based their findings on incomplete or illegible records, and they based their expert opinions on their examinations of the records submitted to them as well as their personal experience in their respective fields. Defendants also argue that even if the experts' testimony satisfy the admissibility requirements of Rule 702, they should be excluded under Rule 403 because they may confuse or mislead the jury.

However, this Court notes that the issues raised by Defendants go to the weight of the testimony and not to the Daubert exclusion of the same. Daubert does not mandate that a party

**Civil No. 06-2079 (SEC)**

proffering expert testimony convince the court that the expert's conclusions are correct, nor that the grounds for the testimony are infallible. The First Circuit has held that "[a]s long as an expert's scientific testimony rests upon 'good grounds ….', it should be tested by the adversary process -- competing expert testimony and active cross-examination -- rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998) (citations omitted); see also Mitchell v. United States, 141 F.3d 8, 17 (1998). The Supreme Court has held that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. The foregoing is based on the importance of expert testimony in medical malpractice cases, more so for the Plaintiff, who bears the burden of showing that the treating physician acted negligently. Therefore, in the instant case, Plaintiffs' allegations will be appropriately dealt with on cross-examination. Excluding the expert's testimony is unnecessary.

Based on the foregoing, Defendant's Motions *in Limine* are hereby **DENIED**.

**SO ORDERED**.

In San Juan, Puerto Rico, this 5th day of March, 2009.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge