**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| KIMBERLY WETHERELL et als * <br> * <br>     Plaintiffs * <br> * <br> v. * <br> * <br> HOSPITAL INTERAMERICANO DE * <br> MEDICINA AVANZADA, INC. et als * <br> * <br>     Defendants * <br> ********************************* | Civil No. 06-2079 (SEC) |

**OPINION and ORDER**

Pending before this Court is Centro Medico del Turabo d/b/a HIMA Caguas' ("HIMA") Motion for Summary Judgment (Docket # 49), Plaintiffs Kimberly Wetherell ("Wetherell"), Artemio Borges, and Stephanie Marie-Borges Wetherell's ("Stephanie") (collectively "Plaintiffs") opposition (Docket # 66), and HIMA's reply (Docket # 70). After reviewing the filings, and the applicable law, HIMA's Motion for Summary Judgment is **GRANTED**.

**Factual and Procedural Background**

On October 26, 2006, Plaintiffs filed suit under diversity jurisdiction against HIMA, Conjunta de Seguros de Responsabilidad Profesional Medico-Hospitalaria ("SIMED"), Dr. Alfonso Serrano-Isern ("Serrano"), his wife, and their conjugal partnership, and other unnamed defendants, alleging medical malpractice, and seeking redress under Articles 1802 & 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141 & 5142. According to the complaint, Wetherell was admitted to HIMA on June 2, 3003 at approximately 7:33 am, for induction of labor. Serrano ordered a cesarean section (C-section) due to "fetal bradycardia and decreased variability", and an umbilical cord prolapse. Docket # 14, pp. 3 & 4. At 8:15 am, Wetherell signed the consent form for said procedure, she was taken to the operating room at 10:00 am, and anesthesia was begun at 10:18 am. Stephanie was delivered at 10:22 am, via a C-section performed by Serrano. Stephanie weighed 7 pounds 5 ounces, with an Apgar score of 8/9, and with the umbilical cord around her neck. She remained hospitalized until June 11, 2003. Plaintiffs allege that Stephanie sustained injuries during the

birth, attributable to intrapartum anoxia secondary to an umbilical cord prolapse, and the delay in performing the C-section. As result, she suffers from physical and neurological defects, global developmental delay, low muscle tone, and will require prolonged medical care, physical, occupational and speech therapy.  Plaintiffs allege that Serrano failed to provide adequate medical standards insofar as he delayed in performing the C-section which in turn led to an improper diagnosis of the intrapartum anoxia secondary cord prolapse. According to Plaintiffs, Serrano's negligent acts caused Stephanie's current and future medical problems, and as a result, they seek that all defendants be held jointly and severally liable for damages in an amount no less than $5,000,000, interest, and litigation costs.

In On March 14, 2008, HIMA filed its motion for summary judgment. According to HIMA, Serrano provided treatment according to the applicable medical standard, and in compliance with a physicians' duty of reasonable care. Notwithstanding, they argue that "the ultimate responsibility for the management of plaintiff['s] labor and delivery was of the admitting physician...". Docket # 49, p. 20. Moreover, HIMA contends that Plaintiffs have not shown that HIMA was negligent in the selection, retainment, and monitoring of Dr. Serrano, thus, their allegations of corporate responsibility fail.

In their opposition, Plaintiffs aver that, contrary to Co-Defendants allegations, the facts in this case show that HIMA is also responsible for Stephanie's damages, and as such, Co-Defendants' request for summary judgment should be denied. Docket # 63.

**Standard of Review**

*R. FED. CIV. P. 56*

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005).   In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant,"

**Civil No. 06-2079 (SEC)**                                                                                       **3**

and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005)(citing Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (citing Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . . Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8 (citing Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have

**Civil No. 06-2079 (SEC)** 4

substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

### Applicable Law and Analysis

Because the instant motion is for summary judgment, Defendants must comply with the requirements of Local Rule 56, and file a statement of facts, set forth in numbered paragraphs, and supported by record citations. See Local Rule 56(b). In turn, when confronted with a motion for summary judgment, the opposing party must:

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposition shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation...Local Rule 56(c).

Local Rule 56(e) further provides that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." Moreover, a "court may disregard any statement of material fact not supported by a specific record citation to record material properly considered on summary judgment." Local Rule 56(e). These rules "are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court." Cabán-Hernández v. Phillip Morris USA, Inc., 486 F.3d 1, 8(1st Cir. 2007). The First Circuit has held that when the parties ignore the Local Rule, they do so at their peril. See Ruiz-Rivera v. Riley, 209 F. 3d 24, 28 (1st Cir. 2000).

Upon reviewing the record, this Court finds that HIMA's Statement of Uncontested

**Civil No. 06-2079 (SEC)**                                                                                          5

Facts ("SUF") ¶¶ 1-4, 7, 9, 11,[1] 12, 13,[2] 14-21, 22,[3] 23, 24, 28-31, 33, 35, and 37[4] are admitted by Plaintiffs, and as such, are deemed uncontested. However, the document provided in support of ¶ 5 is illegible, and as such, will not be considered by this Court. Moreover, while Plaintiffs properly controverted statements ¶¶ 8,[5] 10,[6] 25 & 26,[7] they failed to properly deny ¶ 6,[8] 27, 32,[9] 34, and 36, therefore, said statements are deemed admitted by this Court. Based on the foregoing, the uncontested facts are as follow.

On June 2, 2004, Wetherell was admitted to Hospital HIMA, pursuant to orders from her obstetrician, Serrano. HIMA's SUF ¶ 1. Wetherell was Serrano's patient from February

---

[1] Plaintiffs contest statement ¶ 11, however, they concede that the C-section was begun at 10:20 and ended at 11:00 am. As such, this fact is deemed uncontested.

[2] This statement was improperly contested by Plaintiffs since they failed to provide a record citation in support of their denial.

[3] Dr. Weissberg reports that the care provided to Wetherell fell below the standard of care due to the excessive delay in performing the C-section. He also mentions that "she was told an operating room was not available."

[4] HIMA improperly numbered the last two statements. This Court will consider them as statements 36 & 37.

[5] Pursuant to the attending nurse's notes, Serrano requested a C-section due to low fetal heart rate.

[6] Plaintiff shows that contrary to HIMA's allegations in statement ¶ 10, the pre-anesthesia evaluation was finished and signed by the patient at 8:15am, not 10:00 am, and anesthesia was begun at 10:18 am.

[7] There is controversy about the reason for the delay in taking Wetherell's vital signs an hour after she was admitted, and the lack of adequate monitoring prior to the taking of her vital signs.

[8] Plaintiffs contests statement ¶ 6, arguing that the document provided in support is illegible. However, this Court finds otherwise, and will consider said statement admitted.

[9] Plaintiffs does not provide the specific pages in Exhibit III which support her allegations. Although they cite Exhibit I, Dr. Weissberg's report, in support of their argument, said expert does not conclude that the both Dr. Serrano, and HIMA are to blame for the delay in performing the C-section. Instead, he avers that there was an excessive delay, and an operating room was not available.

6, 2003 to June 12, 2003. Id. at 2. Even though she was admitted at HIMA at 7:33 am, both the physician's orders and nursing notes concerning her admission are posted at 7:00 a.m. Id. at 3. Serrano's admission note on 6/2/2003 states the following: "18 year old female G1, P1, A0, at term with no history of diseases who comes due to low pelvic pain for management of labor and delivery." Id. at 4. The orders from the admitting physician, as reflected in the medical record, are the following: A. Admit to Labor Room, B. NPO, C. CBC with differential, D. U/A [Urinalysis], E. PT/PTT, F. SMA/20, G. APP, H Fetal Monitoring, I. Ringer Lactate [RL] 1000 cc 0.9 NSS, J. Notify doctor Moises Rivera, K. Ampicillin 2 g. IV STAT and then 1 gm IV each every four hours. Id. at 6. With the exception of the order on administration of the antibiotics, none of the remaining orders were placed as STAT. Id. at 7. All blood and urine samples were received by the laboratory at HIMA at 8:15 a.m. Id. at 9. The basic metabolic panel was reported at 9:46 a.m; the complete blood count was reported at 9:38 a.m, and the urianalysis was reported at 9:24 a.m. Id. C-delivery commenced at 10:20 a.m., and ended at 11:00 a.m. Id. at 11. Wetherell was discharged from the Hospital on June 5, 2003. Id. at 12.

According to the record, Serrano is a licensed obstetrician and gynecologist by the Puerto Rico Board of Examiners since July 5, 1989. Id. at 13. On September 15, 1989, Serrano was granted privileges to practice his specialty in obstetrics and gynecology from HIMA, and was appointed to HIMA's medical staff. Id. at 14. On December 27, 1991, Serrano was recognized as a certified Diplomate of the American Board of Obstetrics and Gynecology. Id. at 15. He was re-certified as a Diplomate of the American Board of Obstetrics and Gynecology on November 17, 2000, November 9, 2001, November 25, 2002, and November 20, 2003. Id. at 16. HIMA's bylaws establish the procedure for the application, renewal, and suspension of medical privileges to its medical staff. Id. at 17. Pursuant to HIMA's Medical Staff bylaws, privileges to the medical staff must be renewed every two years. Id. at 18. Serrano's privileges have been renewed consecutively every two

**Civil No. 06-2079 (SEC)**                                                                                          7

years since 1991 to the present. Id. at 19. As of December 4, 2003, Serrano had no reports filed at the National Practitioners Data Bank. Id. at 20.

Plaintiff's expert witnesses in this case are Dr. Steven Weissberg, expert in the field of obstetrics and gynecology, and Dr. Allan Hausknecht, expert in the field of neurology. Id. at 21. On July 6, 2006, Dr. Weissberg rendered an expert report which states that the care provided to Wetherell fell below the standard of care, due to the excessive delay in performing the C-section. Id. at 22. He also mentions that "she was told an operating room was not available." Id. In his report, Dr. Hausknecht states that he deferred the opinions as to any departures in obstetrical areas to Dr. Weissberg, even though he agrees with said expert's opinion. Id. at 23 & 35. During his deposition, Dr. Weissberg admits that there is no order in the record by Serrano to the nursing staff to prepare the patient for an emergency C-section. Id. at 24 & 27. He further admits that Serrano's first order regarding Wetherell was to admit her to the labor room, instead of preparing her for an emergency C-section. Id. at 28. Dr. Weissberg also admitted that if a doctor does not decide to perform an emergency C-section, the nurses have to comply with these orders. Id. at 29. Dr. Weissberg admits that none of these orders, including the order to notify the anesthesiologist, were placed as "STAT". Id. at 30. He further admits that while the patient was in the labor room, she was being monitored, her membranes were intact, she had no cervix dilatation, she had no fever, and that her vital signs were normal when she arrived that morning in the Hospital. Id. at 31. Although Dr. Weissberg concludes that there was a delay in providing the adequate treatment, he refused to blame either the doctor or the nurses. Id. at 32. In his opinion, the hospital staff had an obligation to investigate the cause of the delay, but he also admits that he has not seen any notes or charts which show that the operating room was not ready, or that there were problems with the Operating Room that morning. Id. at 33. Serrano, Wetherell's obstetrician, states that he never planned to do an emergency C-section on said patient. Id. at 36. He further attests that if his clinical judgment is to perform a C-section, the time to

**Civil No. 06-2079 (SEC)**                                                                                           8

perform it is a judgment decision that is attributable to him exclusively, and not to the nursing staff. Id. at 37.

Considering the above mentioned facts, this Court will address the applicable standard in malpractice suits. In a diversity suit, Puerto Rico law is controlling. See Santiago v. Hosp. Cayetano Coll y Toste, 260 F. Supp. 2d 373, 380 (1st Cir. 2003); Marcano Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005). Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141, governs a physician's liability in a medical malpractice suit. See Cortes-Irizarry v. Corporacion Insular De Seguros, 111 F.3d 184, 189 (1st Cir. 1997). Said article provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. Under this statute, "three elements comprise a prima facie case of medical malpractice." Santiago, 260 F. Supp. 2d at 380 (citing Cortes-Irizarry, 111 F.3d at 189). Therefore, in order to prevail in a medical malpractice claim, a plaintiff must establish three elements: "(1) the basic norms of knowledge and medical care applicable to general practitioners or specialists; (2) proof that the medical personnel failed to follow these basic norms in the treatment of a patient; and (3) a causal relation between the act or the omission of the physician and the injury by the patient." Santiago, 260 F. Supp. 2d at 381: see also Sierra-Perez v. United States, 779 F. Supp. at 643; Medina Santiago v. Dr. Alan Velez, 120 P.R. Dec. 380 (1988); Pagan Rivera v. Municipio de Vega Alta, 127 P.R. Dec. 538 (1990); Marcano Rivera, 415 F.3d at 167; Cortes-Irizarry, 111 F.3d at 189. The First Circuit has held that "[i]n the medical malpractice context, an action for damages lies when, by preponderance of evidence, it is proved that the doctor's negligent conduct was the factor that most probably caused the plaintiff's damage." Santiago, 260 F. Supp. 2d at 381 (citing Sierra-Perez, 779 F. Supp. at 643); see also Perez-Cruz v. Hosp. La Concepcion, 115 P.R. Dec. 721, 732 (1984). The "burden of a medical malpractice plaintiff in establishing the physician's duty is more complicated than that of an ordinary tort plaintiff. Instead of simply

**Civil No. 06-2079 (SEC)**                                                                                                          9

appealing to the jury's view of what is reasonable under the circumstances, a medical malpractice plaintiff must establish the relevant national standard of care." Lama v. Borras, 16 F.3d 473, 478 (1st Cir. 1994).

In explaining the duty of care owed to patients, Puerto Rico courts have described it as that level of care which, recognizing the modern means of communication and education, meets the professional requirements generally acknowledged by the medical profession. Santiago, 260 F. Supp. 2d at 380 (citing Irizarry v. Corporacion Insular de Seguros, 928 F. Supp. 141, 144 (D.P.R. 1996)); see also Oliveros v. Abreu, 101 P.R. Dec. 209, 226 (1973); Marcano Rivera, 415 F.3d at 167-168. This is a nationally recognized and applicable standard. Santiago, 260 F. Supp. 2d at 380 (internal citations omitted). Accordingly, physicians are "expected to possess, and use, that level of knowledge and skill prevalent in his or her specialty generally, not simply the knowledge and skill commonly displayed in the community or immediate geographic region where the treatment is administered." Santiago, 260 F. Supp. 2d at 381 (citing Rolon-Alvarado v. Municipality of San Juan, 1 F.3d 74, 77 (1st Cir. 1993). Moreover, "a health care provider has 'a duty to use the same degree of expertise as could reasonably be expected of a typically competent practitioner in the identical specialty under the same or similar circumstances, regardless of regional variations in professional acumen or level of care.'" Cortes-Irizarry, 111 F.3d at 190; Rolon-Alvarado, 1 F.3d at 77-78.

Article 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5142, the statutory source of the vicarious liability doctrine, states in pertinent part that: "[t]he obligation imposed by § 5141 of this title is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible...Owners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties." Therefore, when a patient goes directly to a hospital for medical treatment,

**Civil No. 06-2079 (SEC)**                                                                                           10

and the hospital provides the physicians that treats him/her, the hospital and the physician are jointly liable for any act of malpractice. Ramirez-Velez v. Centro Cardiovascular, No. 05-1732, 2007 U.S. Dist. LEXIS 81956, at *11 (D.P.R. Oct. 25, 2007); see also Marquez Vega, 116 P.R. Dec. at 406-407.

A hospital's liability towards its patients is a firmly established doctrine by the highest court of Puerto Rico, since said institutions owe their patients the degree of care that would be exercised by a reasonable and prudent man in the same conditions and circumstances. Ramirez-Velez v. Centro Cardiovascular, No. 05-1732, 2007 U.S. Dist. LEXIS 81956, at *10 (D.P.R. Oct. 25, 2007). A hospital has been held liable "to its patients for malpractice 'on account of a negligent act on the part of the institution's employees; consequently, the hospital's liability has been predicated on the vicarious liability doctrine.'" Id. at *11 (internal citations omitted). However, when a physician is not employed by the hospital, but instead is granted the privilege of using the hospital's facilities for his/her private patients, the hospital should not be held liable for the exclusive negligence of an unsalaried physician, who was first and foremost entrusted with the patient's health. Marquez Vega, 116 P.R. Dec. at 408-409.

In the instant case, Serrano was granted privileges to practice his specialty in obstetrics and gynecology from HIMA on September 15, 1989, has been recognized as a certified Diplomate of the American Board of Obstetrics and Gynecology, and was re-certified as a Diplomate of said Board on November 17, 2000, November 9, 2001, November 25, 2002, and November 20, 2003. HIMA's bylaws establish the procedure for the application, renewal, and suspension of medical privileges to its medical staff, and provides that the privileges to the medical staff must be renewed every two years. Accordingly, Serrano's privileges have been renewed consecutively every two years since 1991 to the present. Moreover, as of December 4, 2003, Serrano had no reports filed at the National Practitioners Data Bank. Therefore, they exercised due diligence in their selection and

**Civil No. 06-2079 (SEC)** 11

monitoring of Serrano.

Based on the foregoing facts, this Court finds that since Wetherell was Serrano's private patient, and she was admitted to HIMA as such, HIMA is not vicariously liable for Serrano's actions. Moreover, HIMA's nurses and staff followed the doctor's orders accordingly and provided adequate care. Specifically, Wetherell was constantly monitored, her lab work was done properly, her membranes were intact, she had no cervix dilatation, she had no fever, and her vital signs were normal. Also, none of the orders issued by Serrano were marked as STAT, with the exception of ampicillin, thus, nothing in the record indicated that there was a medical emergency. Although Dr. Weissberg believes that the hospital staff had an obligation to investigate the cause of the alleged delay, he also admits that he has not seen any notes or charts which show that the operating room was not ready, or that there were problems with the Operating Room that morning. Furthermore, Serrano, Wetherell's obstetrician, states that he never planned to do an emergency C-section on said patient, instead, he ordered that Wetherell be admitted to the labor room. Serrano also stated that the time to perform a C-Section is judgment decision made by the attending doctor, and not by the nursing staff.

As a result of the foregoing, HIMA's motion for summary judgment is **GRANTED.** As such, Plaintiffs' claims against HIMA are **DISMISSED with prejudice**.

**SO ORDERED**.

In San Juan, Puerto Rico, this 31st day of March, 2009.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge